IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZACHARY K.,

    Claimant,

v.

LELAND DUDEK,
Acting Commissioner of Social Security,

    Respondent.

No. 22 C 2782

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Zachary K.[1] ("Claimant") seeks judicial review of the final decision of the Acting Commissioner of the Social Security Administration[2] ("Commissioner"), denying his application for disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 6]. After reviewing the record and the parties' briefs, the Court grants Claimant's Memorandum in Support of Reversing or Remanding the Commissioner's Decision [ECF No. 14] and denies the Commissioner's Motion for Summary Judgment [ECF No. 15]. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by his first name and the first initial of his last name.

[2] Leland Dudek was appointed as the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

1

# BACKGROUND

## I. Procedural History

On August 12, 2020, Claimant filed an application for disability insurance benefits, alleging a disability beginning June 15, 2020. (R.15). His application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.15). A telephonic hearing was held on July 20, 2020, and all parties participated in the hearing by telephone. Claimant testified at the hearing and was represented by counsel, and a vocational expert also testified. (R.15). On August 18, 2021, the ALJ denied Claimant's application for disability insurance benefits, finding him not disabled under the Social Security Act. (R.15-38). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. Claimant then filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## II. The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any

substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since June 15, 2020, the alleged disability onset date. (R.18). At step two, the ALJ found Claimant had the following severe impairments: bipolar disorder; schizoaffective disorder; post-traumatic stress disorder; attention deficit hyperactivity disorder; and substance abuse disorder. (R.18). At step three, the ALJ found that none of Claimant's impairments met or equaled any listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R.20). With respect to Claimant's mental impairments, the ALJ undertook the paragraph B and C analysis and determined that Claimant had moderate limitations in (1) understanding, remembering or applying information, (2) interacting with others, and (3) concentrating, persisting or maintaining pace and

3

mild limitations in (4) adapting and managing himself. (R.20-23). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with following non-exertional limitations: The claimant can understand, remember, carry out and sustain no more than routine tasks performing the same tasks day in and day out and should not engage in complex tasks. The claimant can have no contact with the pubic for work purposes and no more than occasional contact with coworkers and supervisors for work purposes.

(R.23). At step four, the ALJ found that Claimant was not able to perform any previous work. (R.36). At step five, the ALJ found there were other jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of shirt presser, packer, and assembler. (R.37). Based on these findings, the ALJ concluded Claimant was not disabled. (R.38).

## DISCUSSION

### I. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial

4

evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence leads to their conclusions that is "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." … At times, we have put this in the shorthand terms of saying an ALJ needs to provide a "logical bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict.") (internal quotations and citation omitted). The court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413

(7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

## II. Analysis

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ did not support her finding of no listing level severity at step three; (2) the ALJ did not accommodate all of Claimant's mental limitations in the RFC; (3) the ALJ improperly discounted the limiting effects of his subjective symptoms and complaints; and (4) the ALJ's assessment of the medical opinion evidence is not supported by substantial evidence. The Court agrees with Claimant that remand is required for the reasons discussed below.

In his first argument, Claimant challenges the ALJ's conclusion that Claimant did not meet any listing level severity at step 3. Claimant Brief [ECF No. 14], at 7-11. When considering if a claimant's condition meets or equals a listed impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). The listings of mental impairments consist of three sets of "criteria"— the paragraph A criteria,[3] paragraph B criteria,[4]

---

[3] The paragraph A criteria consists of a set of medical findings specific to the mental disorder covered by the listing. As such, each listing contains different criteria under paragraph A.

[4] To meet the listing criteria for paragraph B, a claimant must have at least two "marked" limitations or one "extreme" limitation in the four broad categories of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

and paragraph C criteria.[5] To be presumptively disabling, a claimant's impairment must satisfy the paragraph A criteria and either the paragraph B or paragraph C criteria of that listing, and the claimant bears the burden of proving that his impairments meet or equal each element of a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

At step two, the ALJ found that Claimant's bipolar disorder, schizoaffective disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and substance abuse disorder were severe impairments. (R.18). But then at step three, the ALJ concluded: "The severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.02, 12.03, 12.04, 12.06, 12.10. 12.11 and 12.15." (R.20). The ALJ did not discuss whether the paragraph A criteria for each listing was satisfied so the Court presumes that Claimant satisfied paragraph A for those listings. Rather, the ALJ found Claimant had not satisfied the criteria in either paragraphs B or C. (R.20-23).

Claimant argues that the ALJ's paragraph B analysis was insufficient and relied on unsupported leaps of logic and that her paragraph C analysis was perfunctory and did not provide a legally sufficient explanation of why the criteria were not met. The Commissioner responds that Claimant did not meet either the paragraph B or paragraph C criteria and merely disagrees with the ALJ's weighing of the evidence. The Court agrees with Claimant.

---

[5] The paragraph C criteria requires a medically documented history of the disorder over a period of at least 2 years, along with evidence of ongoing treatment/therapy that diminishes symptoms and signs of the mental disorder and minimal capacity to adapt to changes in environment or demands not already part of a claimant's daily life.

As discussed above, in her paragraph B analysis, the ALJ found that Claimant had moderate limitations in (1) in understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting or maintaining pace and a mild limitation in (4) adapting or managing oneself. (R.20-23). Although the ALJ specifically identified the listings she considered, she did not provide any explanation why she found that Claimant did not meet or equal any of those listings. The overarching theme in the ALJ's analysis of Claimant's limitations is based on the ALJ's conclusory finding that although the record shows Claimant had "temporary exacerbations," he retained "normal and/or good findings." (R.21, 22, 23, 27, 28, 31. 32. 33, 34, 35). Based on the Court's count, the ALJ used some version of that phrase at least seventeen times through her opinion. As one example, when evaluating the Paragraph B criteria, the ALJ concluded that Claimant only had moderate limitations in interacting with others and in concentration, persistence or pace because "even when he had temporary exacerbations, he retained key normal and/or good findings." (R.22-23).

The Court does not know what the ALJ means when she says that "Claimant retained key normal and/or good findings" nor does it understand how those unidentified "normal and/or good findings" counterbalance Claimant's "temporary exacerbations" so that he would be capable of sustained full-time employment, and the ALJ does not provide a sufficient explanation to demonstrate the "logical bridge" from the evidence to her conclusions. Notably, the record shows that Claimant has a history of substance abuse and had been on a methadone treatment for substance

8

abuse since 2015. (R.597). However, during the year between June 2020 when Claimant filed his application for disability benefits and July 2021 when the ALJ held a hearing in this case, Claimant's drug use relapsed multiple times during which he suffered exacerbations in his mental health.

For example, Claimant required inpatient hospitalization from October 5-13, 2020 "related to his impairments of schizoaffective (depressed) disorder and substance abuse currently on a methadone program." (R.21). When Claimant was admitted, he was noted to have "worsening depression with suicidal ideation, anxiousness, tearfulness, a lot of irritability, panic attacks, and other symptoms …. He was in acute distress and was slow to participate." (R.21). After he was discharged, there are notes in the record that Claimant experienced some improvement which the ALJ cited. (R.21). A couple months later in December 2020, however, Claimant relapsed and was in a partial hospitalization program for substance abuse, from which he was discharged before successful completion of the program because of another relapse and failure to attend at least one group session and to show up for urine screenings. (R.26). He was admitted to a residential treatment center for 28 days. (R.1003). After being discharged, Claimant then went to a halfway house until he relapsed again and tested positive for marijuana and cocaine. (R.27). He then spent a month in jail and was admitted to another inpatient facility for substance abuse in May 2021. (R.27,1028-43). Following his inpatient stay, Claimant returned to outpatient treatment. (R.1063-65).

9

An ALJ has an obligation to consider all record evidence, and the law is clear that an ALJ "may not ignore entire swaths of it that point toward a finding of disability." *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). While the ALJ relies significantly on her assessment that Claimant showed improvement after his relapses, she does not explain how or why she finds that Claimant would be capable of sustaining a full-time job with his repeated cycles of relapse and improvement.

The Court agrees with Claimant that the ALJ focuses only on Claimant's periods of improvement and minimizes his relapses as "temporary periods of exacerbation." (R.21, 22, 23, 27, 28, 31, 32, 33, 34, 35). In her paragraph C analysis, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria were satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. He only had a rare episode of being in acute distress after the loss of a close relative, which was significantly improved with medication (See Finding 5).

(R.23). The Court notes that the ALJ discussed only one element of the paragraph C criteria—Claimant's marginal adjustment, which is satisfied when:

> the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when

10

>the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00G(2)(c).

The Court also agrees with Claimant that the ALJ's analysis of the paragraph C criteria was perfunctory and legally insufficient. As cited above, the ALJ concluded Claimant did not have marginal adjustment because he had only one "episode of being in acute distress after the loss of a close relative," which was significantly improved with medication. (R.23). Claimant argues that conclusion misrepresents the record evidence, and the Court agrees. The record shows Claimant was caught in a cycle of drug use relapse and improvement, and there were ups and downs in his symptoms depending on his substance abuse and the level of treatment he was receiving at the time. (R.23).

Even if the ALJ's analysis was perfunctory, the law provides that a court does not have to remand a case to the ALJ for further specification if it is "convinced that the ALJ will reach the same result." *Butler*, 4 F.4th at 504 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). An ALJ's error is harmless if the court can "predict with great confidence what the result of remand will be." *Id.* (quoting *McKinzey*, 641 F.3d at 892). Here, the Court cannot predict with any confidence the result on remand.

11

One possibility is that the ALJ could reach the same conclusion after providing a sufficient explanation as to why she concluded that each listing was not met and a more fulsome discussion of the paragraphs B and C criteria in the context of each listing identified. Another possibility is that the ALJ could find on remand that one of the listings is met or equaled, which then would mean Claimant was disabled, but in this case, the ALJ then would have to take an additional step to consider Claimant's substance abuse.[6] *See Mitchell K. v. O'Malley*, 2024 WL 1886910, at *1 (N.D. Ill. Apr. 30, 2024). And if the ALJ concluded that Claimant's substance abuse was a contributing factor to his disability, that could impact any finding of disability. The ALJ's analysis here is sorely lacking when measured against legal requirements that must be considered and followed.

Because the Court is remanding on the listing level issue, it does not have to address the remaining arguments in detail. The Court, however, notes that the ALJ uses a similar analysis relying on Claimant's "temporary exacerbations", "good findings", and alleged improvements throughout her opinion, including in her step three listing level assessment, in her RFC assessment, and in her evaluation of

---

[6] The law is clear that "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Thus, if an ALJ determines that a claimant is disabled and there is medical evidence of drug addiction or alcoholism, the ALJ "must determine whether [the] drug addiction or alcoholism is a contributing factor material to the determination of disability"; that is, whether the claimant would still be disabled if she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(a). To do so, the ALJ must determine whether the limitations on which the disability determination is based would remain if the claimant stopped using drugs or alcohol and any of the remaining limitations would be disabling. 20 C.F.R. § 404.1535(b). If the remaining limitations would not be disabling, the drug addiction or alcoholism is a contributing factor material to the determination of disability. *Id.* If the remaining limitations are disabling, the drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Claimant's subjective symptoms. In the Court's view, that analysis misses the mark and falls woefully short of what the ALJ must do to connect the dots between the evidence and her conclusion. Even if this Court were to accept the ALJ's assessment and conclusion were reasonable that when Claimant had temporary exacerbations, he retained normal and/or good findings and showed improvement after relapse, the Court still does not know what that means in the context of Claimant's ability to work, and the ALJ does not provide an explanation how Claimant is capable of sustained full-time employment with his cycle of relapses followed by temporary improvement. This faulty analysis infects significant portions of the ALJ's decision, and remand is required so the ALJ can better articulate her analysis and explain her conclusions.

Finally, as to the medical opinion evidence, the Court notes the ALJ accepted as persuasive the opinion of the state agency consultant at the reconsideration level that Claimant had severe mental impairments (R.29), but the ALJ rejected all of the opinion evidence from Claimant's treating sources finding, among other reasons, that the opinions of Claimant's treating sources were not consistent with the record. (R.30-36). While an ALJ no longer is required to accord any deference to treating source opinions pursuant to 20 C.F.R. § 1520c, the ALJ still is required to articulate her reasons for rejecting a treating source opinion and must properly consider the supportability of that opinion and whether it is consistent with the evidence of record.

In this case, the ALJ rejected the opinions of (1) Claimant's therapist, Niki Patel, (2) a treating psychiatric nurse practitioner, Susan Dunne, and (3) Andew

13

O'Brien, another treating therapist, finding their opinions conclusory and inconsistent with the record. (R.30-36). What gives the Court the most concern here is that all of the treating source opinions were consistent with each other and with portions of the record. But the ALJ rejected those consistent opinions and instead relied on her own lay findings and assessment of Claimant's functioning. As mentioned above, it is well-settled law that an ALJ cannot cherry pick which evidence to evaluate and disregard other relevant evidence. *Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, she must build a logical bridge from the evidence to her conclusion. *Warnell*, 97 F. 4th at 1054; *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). In the Court's view, the ALJ selectively cited evidence that supported her rejection of Claimant's treating sources and ignored other evidence that supported those opinions and the limitations they found.

For example, the ALJ noted that in October 2020 Claimant had "worsening depression with suicidal ideation, anxiousness, tearfulness, a lot of irritability, panic attacks, and other symptoms" (R.21). Then in December 2020, the ALJ noted that he had some "abnormal findings following his sudden discharge from the New Day Center and recent relapse" (R.21). A few months later, the ALJ noted:

> [A]t one visit, he was seen with a blunted range of affect, temporarily impaired insight and judgment related to struggles maintaining abstinence from cocaine, restless motor activity characterized by walking most of the time during a video telehealth visit and need for some redirection without notation of inability to be redirected (10F/168-169); at another visit, he was seen as genuine, but nervous with a slight stutter, difficulty finding words, unfocused energy, restlessness, and distractibility (10F/6, 10). There was also an observation that he was

14

> very emotional and have high anxiety almost to the point of perspiring during this temporary period of exacerbation (10F/93). Further, during this temporary period, he was noted to be touchy feely with the counselors, which the provider indicated needed to stop. In addition, one clinician was concerned during this temporary period that he had a strong sensitivity to noises and body movements in reaction to criticism (10F/108-110). Another provider, however, indicated that this main deficits [sic] appeared to be high distractibility, forgetfulness, poor overall executive functioning, inability to plan, and poor refusal skills (10F/108-110). He also had a good amount of money on him and was trying to bribe staff at times with funds when he was at HAS; combined with report from his housemates that he was using and a positive cocaine test, this resulted in discharge (10F/114).

(R.27). The Court has difficulty reconciling some of the evidence in the record that highlights Claimant's mental limitations, some of which the ALJ discusses, with the ALJ's conclusion that Claimant is cable of working a full-time job, and the ALJ's reliance on Claimant's improvement does not address the issue that his periods of improvement were temporary during the period of time the ALJ evaluated.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that it should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In this case, the Court is not persuaded by the Commissioner's arguments and agrees with Claimant that the ALJ's explanation for her decision is legally insufficient. The Court is not reweighing the evidence. There simply is not enough of an explanation (*i.e.*, the logical bridge between the evidence and the ALJ's ultimate conclusions) for this Court to conclude that the ALJ's decision is supported by substantial evidence. This does not mean the Court agrees with Claimant that he is disabled within the meaning of the applicable law and that he cannot work or that his drug abuse is a contributing

factor to his inability to work. Rather, it means that the ALJ did not sufficiently explain her analysis of the record evidence for the Court to be able to conclude that her decision is supported by substantial evidence. Therefore, remand is required for the reasons discussed above.

## CONCLUSION

Accordingly, for all of the reasons set forth above, Claimant's Memorandum in Support of Reversing or Remanding the Commissioner's Decision [ECF No. 14] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 15] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 31, 2025